the argument that less drastic sanctions would have been appropriate.

Jaffe et al. next argue that imposition of any sanctions was inappropriate because the trustee suffered no prejudice from their failure to respond to the trustee's requests for admissions, relying on *Marshall v. Segona,* 621 F.2d at 768. Jaffe et al. base their assertion of no prejudice on a statement of the trustee, in his motion to reconsider striking the counterclaim, that "[t]he Counterclaim is presently at issue and ready to be set for pretrial conference and trial." They reason that the trustee could not have been prejudiced by a failure to respond to discovery if he was ready to go to trial. In making this argument, Jaffe et al. ask us to examine one statement out of context and ignore all the surrounding circumstances. This we refuse to do. At the time the trustee's attorney made that statement, the trustee was vigorously attempting to pry from Jaffe et al. information concerning the amount of funds they had received from Continental's contract vendees. The subject requests for admissions remained unanswered when the trial court imposed sanctions. In view of the above circumstances, the assertion that the trustee suffered no prejudice is patently frivolous.

Jaffe et al. seek to place the blame for their longstanding refusal to comply with discovery on one of their former attorneys. *See Id.* They claim that this attorney has possession of the documents sought by Grant. Jaffe et al. also argue that their failure to comply with the court's orders was due to inability. *See Id.* Purportedly Jaffe was prevented from complying by his health problems and, later, incarceration at various correctional institutions. However, neither of Jaffe's alleged problems can excuse repeated nonresponsive,

evasive and incomplete answers to interrogatories and requests for admissions. For example, Jaffe's alleged problems with his health, incarceration and attorneys cannot excuse the intentional misconduct of producing documents with critical portions torn off.

In sum, Jaffe et al. have failed to establish that the district court abused its discretion in imposing the sanction of striking their answer to the counterclaim.

## V.

The arguments of Jaffe et al. that the proceedings lacked due process, in the main amount, to no more than assertions of the above arguments in different garb.[6] Jaffe et al. received not only the minimum process that was due, but also a great deal more.

We AFFIRM the decision of the district court.

**John B. WILEY, Jr., # 043919 Plaintiff-Appellant,**

v.

**Louie L. WAINWRIGHT, Ray V. Henderson, Superintendent of Zephyrhills Correctional Institution, Jim Smith, Defendants-Appellees.**

**No. 84–3830.**

United States Court of Appeals, Eleventh Circuit.

July 18, 1986.

---

Mark E. Grantham, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, Fla., for plaintiff-appellant.

Robert J. Krauss, Asst. Atty. Gen., Tampa, Fla., for defendants-appellees.

Before GODBOLD, Chief Judge, FAY, Circuit Judge, and PECK *, Senior Circuit Judge.

PER CURIAM:

This case was vacated and remanded to the district court for the limited purpose of

---

* Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designa-

tion.

its entering a fresh order on de novo review of the magistrate's report and recommendations, affirmatively revealing compliance with *Calderon v. Waco Lighthouse for the Blind,* 630 F.2d 352 (5th Cir.1980). On remand the district court reviewed de novo the portions of the magistrate's report and recommendations to which petitioner had objected, reviewed the entire transcript of testimony, accepted credibility determinations made by the magistrate, adopted the magistrate's recommendations, and dismissed the petition for habeas corpus. A supplemental record has been filed with this court, and the case is now ripe for appellate review.

In 1974 petitioner pleaded guilty to first degree murder in a shooting death and was sentenced to life imprisonment. He filed this habeas action in M.D. Florida, alleging that his plea of guilty was the result of ineffective assistance of counsel. The magistrate, without conducting an evidentiary hearing, recommended dismissing the petition for lack of merit. The district court adopted and confirmed the magistrate's recommendation.

In *Wiley v. Wainwright,* 709 F.2d 1412 (11th Cir.1983), we remanded to the district court with directions that it conduct an evidentiary hearing to consider Wiley's ineffective assistance of counsel claim. The district court assigned the case to Magistrate Thomas G. Wilson for the purpose of conducting the evidentiary hearing. Prior to this hearing petitioner moved to disqualify Magistrate Wilson because of remarks made by the magistrate at two status hearings, which petitioner contended demonstrated a pervasive bias and prejudice toward him. The motion was denied first by the magistrate, then by the presiding district judge.

The magistrate conducted the evidentiary hearing and submitted a 26-page report and recommendation in which he concluded that petitioner's claim was without merit. Wiley timely filed with the district court his formal objections to the magistrate's report and recommendation. The district court denied the objections and dismissed the petition.

These are the relevant facts. Wiley shot and killed David Barlow. The Public Defender's office was appointed to represent Wiley after his arrest and assigned the case to Assistant Public Defender Richard C. Edwards. Edwards met with petitioner on at least four occasions. Some dispute exists as to the extent of the information that petitioner provided Edwards. It is clear, however, that Wiley told Edwards that he had been drinking the day of the shooting, that the shooting occurred in response to remarks Barlow had made about Wiley, and that when Wiley confronted Barlow about these remarks Barlow began advancing toward Wiley with something in his hand, at which time Wiley shot the victim. Wiley gave Edwards the names of Ronnie Epps, Harry Bateman, and "Happy" Davis, who Wiley said witnessed the incident and would support his story of Barlow's move toward Wiley prior to the shooting.

Edwards made repeated but unsuccessful attempts to locate these persons. Edwards, at one of his meetings with Wiley, told Wiley that he was having trouble locating certain witnesses and that none of the witnesses who had given statements could support his statement that Barlow moved toward him. Edwards advised Wiley it was his opinion that if the case went to trial Wiley would be convicted of first degree murder and exposed to the death penalty.

Upon Wiley's request Edwards investigated the possibility of a reduced charge. The prosecution informed Edwards it would not agree to a lesser offense but would not seek the death penalty if Wiley pleaded guilty. Edwards thereafter advised Wiley to so plead. Wiley, after discussing this issue with his mother, pleaded guilty to first degree murder.

*Disqualification of the magistrate*

Petitioner contends that the district court erroneously denied his motion to disqualify Magistrate Wilson before whom the evidentiary hearing was conducted, be-

cause of remarks made by Wilson at two status hearings allegedly indicating bias or prejudice. The questioned remarks are set out in the margin with portions italicized.[1] As a general rule, bias or prejudice sufficient to disqualify a judge must stem from extrajudicial sources. *U.S. v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). An exception exists when a judge's remarks demonstrate such pervasive bias or prejudice that it constitutes bias against a party. *Davis v. Board of School Commissioners of Mobile County*, 517 F.2d 1044, 1051 (5th Cir.1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). A trial judge's comments on lack of evidence does not constitute such pervasive bias. *Whitehurst v. Wright*, 592 F.2d 834, 838 (5th Cir.1979).

We have reviewed the transcript and find no basis for disqualification. The challenged remarks were made in the context of a judicial proceeding and concerned specifically the bearing prospective proof would have on Wiley's ineffective assistance of counsel claim. The remarks appear to be based on impressions obtained during the course of the two status hearings and not on any bias or prejudice harbored by the magistrate prior to the institution of this action. The accuracy of the magistrate's observations is borne out by the action of the district court in accepting and adopting his recommendations after an independent examination of the file.

*Ineffective assistance of counsel*

Wiley contends that his guilty plea to the first degree murder was the result of ineffective assistance of counsel. Specifically, he says that, first, Edwards did not properly investigate possible defenses of intoxication and self-defense before advising him to plead guilty, and, second, Edwards provided him with erroneous and misleading information at various stages of the representation. We have reviewed the record and find no error.

We defer to the district court's findings of fact absent a clearly erroneous determination but apply our own judgment as to whether the conduct determined by these facts constitutes ineffective assistance of counsel. *Young v. Zant*, 677 F.2d 792, 798 (11th Cir.1982). The ineffective assistance of counsel claim is not precluded

---

1. Specifically, Wiley asserts that the following comments by Magistrate Wilson during the course of status hearings demonstrated a pervasive bias or prejudice.

    THE COURT: Well, I'm not authorized to rule on the investigator, the District Judge has to do that under the Criminal Justice Act.
    MR. GRANTHAM [Counsel for Wiley]: Would that be Judge Kovachevich in this case?
    THE COURT: Yes. I would be inclined to deny it. *This case is another example of the waste of time of people who are guilty as heck and what some—want some—*
    MR. GRANTHAM: Judge, there's no question that this man did commit a crime. There is some serious doubt in my mind that he was convicted of the appropriate crime and it's my responsibility to try and represent him as best I can.
    THE COURT: Well, what do you mean by that, the lawyer didn't argue the right—he pled guilty?
    MR. GRANTHAM: I understand that, Judge.
    THE COURT: And when the trial judge said, "Hey, wait a minute. What were you, about 35 feet away?

    And he said, "No I was closer than that."
    Frankly, I think the Eleventh Circuit, if they had applied *Strickland versus Washington* we would never see this case again.
    *So I don't see this case going anywhere, especially if the defense attorney is going to testify that the Petitioner never told him that he was drinking.* It's what he knows. And so I'm not going to send in a memo saying that I think it's [hiring an investigator] stupid, but if I were ruling on it I would deny it. Having seen a number of these, and *this case isn't one of the ones that sparks my interest as some guy who was denied a fundamentally fair opportunity,* which is now the standard, and, as we all know, the emphasis the Eleventh Circuit put on the duty to investigate has gone down the drain.
    . . . .
    *But if you can't get over the hurdle that he was ever told about it [possible intoxication], the lawyer was, it doesn't matter whether these other guy said he was drunk as a skunk.*
    . . . .
    *Based upon the information which has been related to me so far, I seriously doubt whether the witnesses which the petitioner seeks to locate can add anything significant to his case.*

by the petitioner's plea of guilty, if the advice of counsel falls below the minimum required by the Sixth Amendment. *Bradbury v. Wainwright,* 658 F.2d 1083, 1087 (5th Cir.1981), *cert. denied,* 456 U.S. 992, 102 S.Ct. 2275, 73 L.Ed.2d 1288 (1982). A petitioner alleging ineffective assistance must show by a preponderance of the evidence that counsel's performance was deficient and that he was prejudiced by the deficient performance. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel must sufficiently familarize himself with the facts and the law that he can advise the defendant meaningfully on available options. This obligation requires the attorney to "make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."

■ Under Florida law the intoxication defense to first degree murder is not available merely when the assailant has engaged in substantial drinking prior to the incident or is even intoxicated but only when the assailant is so intoxicated that he is unable to form an intent to kill. *Leon v. State,* 186 So.2d 93 (Fla.App.1966). There is no evidence that Edwards unreasonably concluded that Wiley possessed the requisite intent. Petitioner did not initially mention his drinking to Edwards, nor did he, after Edwards inquired about possible drinking, ever say that he was so drunk that he did not know what he was doing. Edwards testified that he went to the bar where the events occurred to investigate, and no witnesses with whom he spoke stated that Wiley was intoxicated. Petitioner's full recollection of the events surrounding the shooting tended to demonstrate sufficient mental capacity to form the requisite intent.

Wiley asserts that had Edwards located Milton Henderson, Joseph Walker, and Johnny Wilson they would have provided information that might have supported an intoxication defense. But their testimony would only have established that Wiley had been drinking heavily, something Edwards already knew. Moreover, Edwards made repeated but unsuccessful efforts to locate these witnesses. Further, Wiley admitted at the evidentiary hearing that he intended to shoot Barlow, an admission that negates the lack of intent element of the intoxication defense. Edwards rendered effective assistance of counsel as to the intoxication defense.

As to investigation of a claim of self defense, Wiley stated in his initial meeting with Edwards that Barlow had begun advancing toward him when he shot him, and that if contacted, Harry Bateman,[2] Milton Henderson and Willie Davis would support this account of the incident. At the evidentiary hearing Davis testified that the victim advanced on Wiley with a knife drawn, while Henderson testified that the victim "might" have advanced toward Wiley before being shot. The magistrate found the testimony of both of these witnesses, particularly Davis, incredible. Further, Edwards and others on the public defender's staff made repeated though unsuccessful efforts to locate these witnesses, including leaving messages at last known addresses asking them to contact the Public Defender's Office. None of the witnesses with whom Edwards spoke substantiated Wiley's account of the incident, nor did the police reports. No weapon was found on or near the victim. Additionally, one witness to the shooting told Edwards that Wiley had shot the victim at least once while he was lying on the ground. When advising petitioner to plead guilty, Edwards made him aware of both the information he had received that supported his opinion and of his inability to locate some witnesses. Finally, Edwards testified that, even had he successfully located Henderson and Davis and had heard from them versions of the incident similar to their testimony at the evidentiary hearing, because of the overwhelming weight of the

---

**2.** Edwards obtained a statement Bateman had given to the police that indicated Barlow did not

make a move toward petitioner.

evidence against any self defense claim, he would have recommended to Wiley that he plead guilty. Petitioner received effective assistance of counsel as to the self defense issue.

With respect to both the intoxication and self defense issues, Wiley has demonstrated neither the deficient performance nor the prejudice required by *Strickland v. Washington.* He raises three other grounds for his ineffective assistance of counsel claim: Edwards (1) failed to advise him of the elements of first degree murder; (2) erroneously informed him that the 25-year minimum mandatory sentence would be ruled unconstitutional; and (3) improperly instructed him how to respond to the trial judge's questions at the change of plea proceedings. The magistrate addressed each of these claims and determined they were without any basis in fact, and the district court both adopted these findings and reached the same result on de novo review.

AFFIRMED.