Buddy NICHOLS, Petitioner–Appellant Cross–Appellee,

v.

Mac Sim BUTLER, Sheriff; Don Siegelman, Attorney General of the State of Alabama, Respondents–Appellees Cross–Appellants.

No. 90–7101.

United States Court of Appeals, Eleventh Circuit.

Feb. 26, 1992.

Robert E. Lusk, Jr., Asst. Atty. Gen., Montgomery, Ala., for respondents-appellees, cross-appellants.

Dennis N. Balske, Montgomery, Ala., for petitioner-appellant, cross-appellee.

Before TJOFLAT, Chief Judge, FAY, KRAVITCH, HATCHETT, ANDERSON, EDMONDSON, COX, BIRCH, and DUBINA, Circuit Judges, and JOHNSON *, Senior Circuit Judge.

FAY, Circuit Judge:

The state appeals the district court's granting of habeas corpus relief to Buddy Nichols pursuant to 28 U.S.C. § 2254. A panel of this court affirmed, *Nichols v. Butler,* 917 F.2d 518 (11th Cir.1990), holding that Nichols' right to testify was violated by his attorney's threat to withdraw should Nichols insist on testifying, and that this violation was not harmless. *Id.* at 521. A majority of the judges of this court in regular active service voted that this case be reheard by this court en banc. *Nichols v. Butler,* 932 F.2d 900 (11th Cir.1991) (on petition for rehearing and suggestion of rehearing en banc).[1] On rehearing, we AFFIRM the grant of habeas corpus relief.

## BACKGROUND

Buddy Nichols was convicted of first-degree robbery in October 1986 following a jury trial in the Circuit Court of Montgomery County, Alabama.[2] The evidence introduced at trial showed that shortly after midnight two men went into a Zippy Mart.

The first man entered alone and asked for beer. A store employee testified that he glanced at this man for "not even a second." Shortly thereafter, the second man entered the store carrying a sawed-off shotgun and told the employee to get behind the counter and get the money. The first man then returned to the front of the store, at which time the store employee "glanced at him" for "less than a second." At trial, the *only* evidence presented to the jury linking Nichols to the robbery of the Zippy Mart was the store employee's identification of Nichols as the first man who entered the store. A fingerprint removed from the door of the beer locker at the store did not match those of Nichols, and a tire print next to the store did not match those of Nichols' vehicle. (1st Supp.R.:Trial R.Vol. I at 101–03). Moreover, a defense witness, Donald Hannah, testified at trial that it was he and another man, *not* Buddy Nichols, who robbed the Zippy Mart that night. (1st Supp.R.:Trial R.Vol. I at 127–34). Nichols himself did not testify.

The jury nevertheless found Nichols guilty of first-degree robbery. Because of his three prior felony convictions, he was sentenced as an habitual offender to life imprisonment without possibility of parole.

In November 1986, Nichols, with the assistance of new counsel, filed a motion for new trial on several grounds, including that trial counsel was ineffective because he did not permit Nichols to testify in his own defense. After an evidentiary hearing, the trial court denied the motion for new trial. Nichols appealed to the Alabama Court of Criminal Appeals, which affirmed without opinion. *Nichols v. State,* 524 So.2d 392 (Ala.Ct.App.1988). Nichols then filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Middle District of Alabama.

---

* Senior U.S. Circuit Judge Frank M. Johnson, Jr. has elected to participate in this decision pursuant to 28 U.S.C. § 46(c).

1. This order vacated the previous panel's opinion. *Nichols v. Butler,* 932 F.2d 900 (11th Cir. 1991) (on petition for rehearing and suggestion of rehearing en banc).

2. Nichols was originally convicted of first-degree robbery in April 1986. However, the court later granted Nichols a new trial because of newly discovered evidence.

United States Magistrate Judge Charles S. Coody conducted an evidentiary hearing. Based on that hearing and a review of the state trial court record, the magistrate judge issued a report recommending that the petition be granted. After reviewing all the evidence, the district court adopted the recommendation of the magistrate judge.

The district court found that after the first day of trial, Nichols and his trial counsel had a heated argument about whether Nichols would testify. Nichols' trial counsel apparently felt that Nichols should not testify because the trial had gone well and there was a significant risk that Nichols' testifying could prejudice his case. Nichols' counsel was concerned that Nichols' prior felony record and serious drug problem might be exposed to the jury and severely damage him.

However, Nichols continued to insist that he testify.[3] Trial counsel then told Nichols that if he chose to testify counsel would seek to withdraw from his case.[4] Counsel apparently did not inform Nichols that he had a right to testify and that the ultimate decision on whether he would testify belonged to Nichols. Nor did counsel inform Nichols that even if counsel sought to withdraw from the case after the first day of trial, the trial court could have refused the request. The district court found that Nichols did not testify because he feared the loss of his counsel in mid-trial, given the extensive work counsel had done in the case. Based on this evidence, the district court found both that Nichols' right to testify had been violated and that he had received ineffective assistance of counsel because counsel's threat to withdraw prevented Nichols from testifying at trial.

## DISCUSSION

In this case, the district court found that Nichols did not voluntarily choose not to testify, but instead was coerced into silence by his counsel's threat to withdraw from the case in mid-trial.[5] Nichols argues that he was denied both the effective assistance of counsel and his right to testify by the actions of his attorney. We agree.

In *United States v. Teague,* 953 F.2d 1525 (11th Cir.1992) (en banc), this court held "that a criminal defendant has a *fundamental* constitutional right to testify in his or her own behalf at trial. This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel." *Id.* at 1532. We also held that ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), is a proper framework in which to address a case such as this, where the defendant claims his right to testify was violated, not by the government or the trial court, but by his attorney. *Teague,* at 1534.

In *Strickland,* the United States Supreme Court outlined the requirements for a successful claim of ineffective assistance of counsel.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that

---

3. Nichols testified at the evidentiary hearing that he wanted to testify at the second trial

   [b]ecause I was found guilty at the first trial, and I didn't testify. I didn't get up there and tell nobody where I was at, or whatever, and I know this, you know. And I just felt like I should get up there because they didn't have any evidence against me, Judge, except a man said he had two quick sudden glances at me; that's no evidence. And I just felt like I should tell them where I was at, because I was the only one that knew. If I didn't tell them, then nobody would tell them.
   (R2 at 39).

4. Nichols' counsel testified and the district court found that the reasons counsel felt Nichols should not testify were purely strategic and not based on any concern that Nichols would commit perjury.

5. Upon review of the record, we cannot say that these findings of fact are clearly erroneous, and they are therefore binding on this court. *See Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *United States v. Teague,* 953 F.2d 1525 (11th Cir.1992); *Wiley v. Wainwright,* 793 F.2d 1190, 1193 (11th Cir.1986).

the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S.Ct. at 2064.

The performance of Nichols' trial attorney in this case was clearly deficient. In *Teague,* we noted that it is primarily the responsibility of defense counsel to ensure that the defendant's right to testify is protected by "advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide." At 1533. (footnote omitted); *see also* Ala.Rules of Professional Conduct 1.2(a) (1991) ("In a criminal case, the lawyer shall abide by the client's decision, *after consultation with the lawyer,* as to a plea to be entered, whether to waive jury trial and *whether the client will testify."* (Emphasis added.)).[6] Further, we noted that the first prong of the *Strickland* test would be met "if defense counsel refused to accept the defendant's decision to testify and would not call him to the stand." *Teague,* at 1534.

It is beyond question that an attorney cannot threaten to withdraw during a trial in order to coerce the defendant to relinquish his fundamental right to testify. All attorneys have an ethical obligation to represent their clients competently and zealously. An attorney should seek to withdraw from representation only where there are compelling circumstances, Model Code of Professional Responsibility EC 2–32 (1986), and only "if withdrawal can be accomplished without material adverse effect on the interests of the client." Ala.Rules of Professional Conduct 1.16(b) (1991); *see also* Model Code of Professional Responsibility DR 2–110(A)(2) (1986) ("a lawyer shall not withdraw from employment until

he has taken reasonable steps to avoid foreseeable prejudice to the rights of his client, including giving due notice to his client, allowing time for employment of other counsel ... and complying with applicable laws and rules"). Where a trial has already begun, the risk of prejudice to the client from withdrawal of counsel is significant. The decision by a defendant to exercise his fundamental right to testify at his own criminal trial, without more, is clearly not a sufficient reason for his attorney to seek to withdraw, even where that decision is against the advice of counsel.[7] Of course, counsel should advise his client in the strongest terms possible if he feels that it would be unwise for the client to testify.[8] However, to coerce his client into remaining silent by threatening to abandon him mid-trial goes beyond the bounds of proper advocacy. We agree with the district court that Nichols' trial counsel was not functioning as the "counsel" guaranteed Nichols by the Sixth Amendment.

We also find that the second requirement of *Strickland*—that counsel's errors prejudiced the defense—has been met. The testimony of a criminal defendant at his own trial is unique and inherently significant. "The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Green v. United States,* 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d 670 (1961). When the defendant testifies, the jury is given an opportunity to observe his demeanor and to judge his credibility firsthand. As the United States Supreme Court noted in *Rock v. Arkansas,* 483 U.S. 44, 52, 107 S.Ct. 2704, 2709, 97 L.Ed.2d 37 (1987), "the most important witness for the defense in many criminal cases is the defendant himself." Further, in a case such as this where the question was not whether a crime was committed, but whether *the*

---

**6.** The Alabama Rules of Professional Conduct are based on the American Bar Association Model Rules of Professional Conduct.

**7.** Of course, the client does not have the right to commit perjury. *See Nix v. Whiteside,* 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). In this case, however, counsel testified that his decision concerning whether or not Nichols

would testify was based purely on tactical considerations, not any concern that Nichols would commit perjury.

**8.** In this case, the reasons counsel felt Nichols should not testify appear reasonable. However, the reasons given by Nichols for wanting to testify also appear reasonable.

*defendant* was the person who committed the crime, his testimony takes on even greater importance. Indeed, "[w]here the very point of a trial is to determine whether an individual was involved in criminal activity, the testimony of the individual himself must be considered of prime importance." *United States v. Walker*, 772 F.2d 1172, 1179 (5th Cir.1985).

This was a very close case; the only evidence that Nichols was the person involved in the robbery was the eyewitness identification of him by a store employee who had glimpsed him only briefly. If Nichols had testified, he could have presented his version of the events of that evening in his own words. The jury would then have been able to weigh his credibility against that of the store employee's perception. Moreover, Nichols' testimony would have been supported by the exculpatory testimony of Donald Hannah. Under these circumstances, there is at least a reasonable probability that, but for counsel's unprofessional conduct, the result in this case would have been different. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. We hold that Nichols received constitutionally ineffective assistance of counsel.[9]

## CONCLUSION

For the reasons set forth above, we AFFIRM the judgment of the district court.

EDMONDSON, Circuit Judge, dissenting in which COX and BIRCH, Circuit Judges, join:

If defense counsel had withdrawn in the midst of trial, he might have been guilty of conduct outside of the range of competent representation; but, he did not withdraw. His threat to withdraw, not acted upon, does not make counsel ineffective.

The lawyer and the client disagreed about tactics; but the lawyer had no duty to yield to the client, particularly under the circumstances of this case. Before trial, defendant had willingly agreed with counsel's advice that defendant not testify, but one day into a two-day trial, defendant changed his mind and pressed to testify. When a criminal defendant attempts to overrule his lawyer's tactical decisions, he runs some risk that the lawyer will seek to withdraw.[1] In this case, the threat to withdraw persuaded the client to accept the tactics to which he had originally agreed. I believe defendant had no absolute right to testify. *See United States v. Teague*, 953 F.2d 1525 (11th Cir.1992) (Edmondson, J., concurring). His constitutional right to testify was limited to a right to be free of governmental interference with his testimony; and there was, in fact, no governmental interference.

Counsel's decision not to call defendant was a reasonable one. I cannot say that defense counsel was ineffective in a constitutional sense; the adversarial proceeding was fair. I would reverse the judgment of the district court.

Even if I agreed with *United States v. Teague*, 953 F.2d 1525 (11th Cir.1992), I would grant Nichols no relief because I see the court's opinion as creating a "new rule" within the meaning of the Supreme Court's decision in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).[2] It is true, of course, that a defendant's right to effective assistance is not new. But that misses the point. Rights for the pur-

---

**9.** Nichols also cross-appeals the district court's findings that the identification of Nichols by the store employee was "not unreliable," and that trial counsel was not ineffective because he failed to call an expert witness on the unreliability of eyewitness identification. Because we find the district court correctly held that Nichols' trial counsel was ineffective because he prevented Nichols from testifying, we decline to address these other claims.

**1.** Withdrawal in the midst of a state trial raises several interesting ethical and constitutional questions; but because no one withdrew here, we need not decide them today. I would leave the ethical questions to the states. On the federal rights issues, I doubt that lawyers have no correct choice but to tolerate a lot of client interference on tactical matters or that lawyers have no right to attempt to withdraw when counsel and client sharply disagree in the midst of trial, especially if the client is changing his position from that agreed to before trial.

**2.** *Teague v. Lane* holds that new rules are generally to be excluded from application on collateral review. *Teague*, 489 U.S. at 316, 109 S.Ct. at 1078.

poses of *Teague v. Lane* must be more particularized than that; otherwise, one could say that it is well-settled that one is due a fair trial and, from then on, there would be no new rights, just clarifications of the well-established right to a fair trial. *Teague v. Lane* would then amount to nothing.

Our *United States v. Teague* en banc opinion purports to vest criminal defendants with a new right—the right to be advised particularly of the right to testify if one chooses and the right to testify despite counsel's strongly held and reasonable criticism that defendant's testifying will significantly lessen the likelihood of acquittal. *United States v. Teague* speaks of ineffectiveness of counsel. But, unlike most evaluations of proper performance in claims of ineffectiveness of counsel, the right to testify as developed in *United States v. Teague* is not dependent on or shaped by the facts of each case; it is a general rule.[3] No Supreme Court holding demands that outcome; dicta, such as the often quoted language in *Rock v. Arkansas*[4] cannot "dictate" a result in later cases unless we intend to disregard the important distinction between a holding and dicta or unless we intend to redefine the word "dictate."[5] It is one thing to follow precedent; it is something else to extend it.

Also, *United States v. Scott*, 909 F.2d 488 (11th Cir.1990), does not hold or dictate what the en banc court in *United States v. Teague* holds; the *Scott* decision holds that

it is error for a judge (that is, a government official) to instruct a client that he must choose between testifying on his own behalf or giving up his right to counsel.[6] The *Scott* opinion talks about a defendant's absolute right to testify in federal courts, but even if we assume that the case holds that a defendant will be denied the effective assistance of counsel if his lawyer—not a judge—prevents defendant from testifying and that *Scott* would dictate the same practice in state courts, *Scott* was decided in 1990 and involved a trial held in 1989. I contend that *Scott* itself is a new rule in this circuit and cannot—in the light of *Teague v. Lane*—be allowed to affect the validity of Nichols' 1986 conviction.

Labelling a holding a "new rule" does not end the retroactivity analysis; there are two exceptions to the principle that new rules are unavailable on collateral review. *Sawyer v. Smith*, —— U.S. at ——, 110 S.Ct. at 2831. Neither exception applies here. The first exception is the new rule that decriminalizes defendant's offense or "prohibits imposition of a certain type of punishment for a class of defendants because of their status or offense." *Id.* (citations omitted). This exception clearly does not apply.

The second exception involves "watershed rules of criminal procedure ... [which] alter our understanding of the bedrock procedural elements that must be found to vitiate the fairness of a particular conviction ... [and] without which the like-

---

**3.** The opinion in *United States v. Teague* talks a lot about a defendant's right to testify. Most of these words are dicta—words unessential to the case's outcome. Considering the facts in *Teague,* the question of whether a defendant has the personal right to decide to testify could have been decided either way without affecting the outcome of the case. The decision should properly be viewed to hold only that, if defendant has a right to choose for himself to testify, he did not, in fact, choose to do so in *Teague.* Because Teague's will to testify was not " 'overborne' by his counsel," the court did not need to decide what rights would have been violated if, in fact, Teague's will had been overborne.

**4.** *Rock* holds that a per se rule excluding all hypnotically refreshed testimony infringes impermissibly on a criminal defendant's right to testify on his behalf. *Rock v. Arkansas,* 483 U.S.

44, 61, 107 S.Ct. 2704, 2714, 97 L.Ed.2d 37 (1987).

**5.** *Teague v. Lane* explained that "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague,* 489 U.S. at 301, 109 S.Ct. at 1070. Just because earlier decisions "inform, or even control or govern, the analysis of [a] claim, it does not follow that they compel [or dictate] the rule." *Sawyer v. Smith,* —— U.S. ——, ——, 110 S.Ct. 2822, 2828, 111 L.Ed.2d 193 (1990) (quoting *Saffle v. Parks,* 494 U.S. 484, 491, 110 S.Ct. 1257, 1261, 108 L.Ed.2d 415 (1990)).

**6.** The precedential authority of a case is properly based not on what was said in the opinion, but on what was actually decided by the court.

lihood of an accurate conviction is seriously diminished." *Id.* I cannot see how allowing the defendant to have the last word on whether he will testify enhances the accuracy of the criminal conviction, or enhances anything, for that matter, except the difficulty of the lawyer's efforts on behalf of defendant's best interests. In fact, as I have written in my concurring decision in *United States v. Teague*, allowing the defendant to override his counsel's tactical decisions probably lessens the quality of the adversarial process upon which we count for a fair trial leading to a reliable outcome. *Teague*, 953 F.2d at 1535 (Edmondson, J., concurring).

Because the rule supposedly created by *United States v. Teague* is a new rule, which conforms to no established exceptions, I would not allow Nichols to receive retroactively the benefit of that rule. I would deny habeas corpus relief and reverse the judgment of the district court.