[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 22, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11019
Non-Argument Calendar

_____

D. C. Docket No. 06-80124-CV-KLR

KIM DUAYNE CAIN,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL OF THE STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 22, 2008)

Before DUBINA, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Kim Duayne Cain, a Florida state prisoner proceeding through counsel, appeals the denial of his federal habeas corpus petition, 28 U.S.C. § 2254. We granted a certificate of appealability on the issue of "[w]hether the district court erred in denying [Cain's] claim that his trial counsel was ineffective for advising [Cain] not to testify on his own behalf, in part, because [Cain] would not be entitled to make the initial and rebuttal arguments at closing argument under Florida Rule of Criminal Procedure 3.250 if [Cain] testified."

Cain asserts he was denied the effective assistance of counsel at his murder trial because his attorney advised Cain against testifying on his own behalf. Cain contends this advice was deficient, in that it was based on the erroneous legal conclusion that by Cain not testifying, counsel would have the right to present the concluding argument to the jury. Moreover, Cain asserts counsel's deficient representation prejudiced the proceedings, as Cain's testimony would have explained the State's evidence linking him to the murder. Specifically, Cain would have testified he left his palm print at the murder scene when he inspected the home for termites several months before the killing, and that a man named Eric Newton brought the victim's bracelet to him, which the two men subsequently pawned.

We review the grant or denial of a § 2254 federal habeas petition *de novo*. *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005). However, under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996), habeas relief from a state court decision may not be granted unless the state's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively reasonable." *Williams v. Taylor*, 120 S. Ct. 1495, 1521 (2000).

The Supreme Court has established a two-part inquiry for reviewing claims of ineffective assistance of counsel. *Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984). "First, the defendant must show that counsel's performance was deficient." *Id.* "The proper measure of attorney performance remains . . . reasonableness under prevailing professional norms," although review "of counsel's performance must be highly deferential," and "the court should recognize that counsel is strongly presumed to have rendered adequate assistance

3

and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 2065-66. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 2064. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2068.

"[A] criminal defendant has a *fundamental* constitutional right to testify in his or her own behalf at trial. This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel." *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992) (en banc) (emphasis in original). To protect this right to testify, counsel must inform the defendant that he has a right to testify or not to testify, "the strategic implications of each choice," and that the defendant must ultimately decide himself whether to testify. *Nichols v. Butler*, 953 F.2d 1550, 1553 (11th Cir. 1992) (en banc). In *Nichols*, we held a defendant's failure to testify, based on counsel's improper threat to withdraw if the defendant testified, caused sufficient prejudice under *Strickland* in a "very close case" where the only evidence the defendant committed the crime was the identification of the defendant by one eyewitness, and where the defendant would have offered his own version of

4

the events for the jury to weigh against the eyewitness's account. *Id.* at 1553-54. To that end, we noted "[t]he testimony of a criminal defendant at his own trial is unique and inherently significant," especially "where the question was not whether a crime was committed, but whether *the defendant* was the person who committed the crime." *Id.* (emphasis in original).

*Strickland* provides the applicable and clearly established Supreme Court precedent concerning Cain's claim of ineffective assistance of counsel. As Cain challenges only the state court's application of the two-part *Strickland* test in its resolution of his motion for post-conviction relief, we must determine whether the state court's application of *Strickland* was objectively unreasonable. *See Williams*, 120 S. Ct. at 1521 (interpreting 28 U.S.C. § 2254(d)(1)).

Accordingly, we must first address whether it was objectively unreasonable for the state court to conclude that defense counsel's performance was not so deficient that it "fell below an objective standard of reasonableness" considering all of the circumstances. *Strickland*, 104 S. Ct. at 2064. On the one hand, Cain's trial counsel erroneously told him that by not presenting a defense, including Cain's testimony, they would reserve the right to present first and rebuttal closing arguments. As a result, when Cain stated at trial that he was very satisfied with counsel's performance and that he agreed with the decision not to testify, this was

5

based on counsel's mistaken legal advice. However, by Cain's own account, his decision not to testify was part of counsel's overarching advice against presenting a defense case in general, which was also based on counsel's belief the State had not met its burden of proof and the fact that Cain would remain in custody while the defense presented its case. Given the circumstantial nature of the case against Cain, and in light of the high level of deference afforded to the decisions of trial counsel when reviewed in hindsight, counsel's advice against presenting a defense case could be considered a reasonable strategy. Therefore, the state court's finding that defense counsel's performance did not fall below an objective standard of reasonableness was objectively reasonable.

However, even if Cain's decision not to testify resulted from professionally unreasonable advice from counsel, Cain has not shown that the state court's application of *Strickland*'s prejudice prong was objectively unreasonable. To establish prejudice, Cain had to demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S. Ct. at 2068. Cain would have testified he left his palm print at the murder scene when he inspected for termites several months before the murder, and that a man named Eric Newton brought the victim's

6

bracelet to Cain, which the two men pawned two days after the murder, and which the State used to link Cain to the murder.

Cain's theory he left his palm print on the victim's shower, where she was found murdered, when he inspected her home for termites was made known to the jury through the cross-examination of Cain's employer. Furthermore, the State could have impeached Cain's testimony with his prior statements to the police that the only places that his prints would possibly be at her home were the doorknobs, cabinets, and perhaps an attic entrance. Additionally, the potential effect of Cain's purported testimony must be assessed in light of the State's other evidence. The investigating officers did not find Cain's prints anywhere else in the home besides the shower ledge. The woman who cleaned the victim's home for several years testified she thoroughly cleaned the victim's shower with Clorox every other week in the months between Cain's last known visit to the home to inspect for termites and the week leading up to the murder, including the area where officers discovered Cain's palm print. Two of the State's fingerprint examiners agreed that any fingerprints on the shower would have been removed during the above-referenced cleanings. As a result, the state court reasonably concluded there was not a reasonable probability that the trial outcome would have been different had he testified about the palm print.

7

Cain's claim that Newton brought the bracelet to him was also made known to the jury during the cross-examination of Newton. Further, whereas Cain's personal presentation of this story to the jury, as opposed to defense counsel's, would have been "unique and inherently significant," it would also have opened the door for the impeachment with inconsistent pre-trial statements. *Nichols*, 953 F.2d at 1553. For example, Cain told investigators he had "never seen that bracelet before," though he also stated he in fact pawned a separate bracelet, but "God only knows" who gave it to him, and he "might have had it for two or three months" before pawning it. Moreover, the potential effect of Cain's purported testimony should again be evaluated in light of the State's other evidence. For instance, the bracelet Cain and Newton pawned was identified as the victim's, and she was seen wearing it the day before her murder. In any event, had Cain testified it would have been up to the jury to weigh Newton's version of the story against Cain's. Based on the foregoing, and the fact that Newton was never linked to the victim or her home, whereas Cain's palm print was found on the ledge of the shower wherein the victim was found murdered, the state court reasonably concluded there was not a reasonable probability that the verdict would have been different had he testified that Newton gave the bracelet to him.

As a result, the state court's conclusion that Cain was not denied effective assistance of counsel was not objectively unreasonable. Accordingly, we affirm the denial of his § 2254 habeas petition.

**AFFIRMED.**