[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14505

_____

D.C. Docket Nos. 1:10-cv-24022-WMH; 1:09-cr-20324-WMH-1

MICHAEL PERICLES,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 28, 2014)

Before HULL, BLACK and FARRIS,[*] Circuit Judges.

PER CURIAM:

Petitioner-appellant Michael Pericles appeals the district court's denial of his

motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255.  After

_____

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

careful review of the record and the briefs, and with the benefit of oral argument, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

**A.     Arrest and Indictment**

On April 1, 2009, Officers Luis Cerra and David Segovia of the Miami-Dade Police Department were on patrol when they learned of an incident at a residence located at 345 NW 59th Terrace.  Officers Cerra and Segovia went to that residence, and there observed rustling in the bushes, as though someone were running through the bushes on the east side of the house.  Officer Cerra "immediately went to the west side of the house to try to cut that person or persons off, at the rear of the house."  Officer Cerra entered the backyard of an adjacent house and climbed on to a push cart leaned against a wooden fence.  From that vantage point, he could see into the backyard of 345 NW 59th Terrace.

Officer Cerra observed "a black male come . . . running from the east side of the house onto the rear of the back."  Officer Cerra later determined that this man was Pericles.  Pericles had a green bag in his hand.  Upon entering the backyard, Pericles partially hid the bag underneath a tarp and then went to the rear entrance of the residence.

As Pericles was about to enter the residence, Officer Cerra drew his gun and said, "police, don't go in the house; let me see your hands."  Pericles made eye

2

contact with Officer Cerra and then fumbled with an L-shaped object in his waistband. The object fell to the ground, making the noise of metal hitting concrete. Pericles then entered the residence.

After Pericles did so, Officer Cerra climbed over the wooden fence and into the backyard. Once in the backyard, he observed that the L-shaped object was "a black handgun." Officer Cerra also conducted a safety sweep of the backyard, during which he discovered: (1) a loaded AK-47 magazine clip sitting on top of the tarp, containing 29 rounds of ammunition; (2) three assault rifles (two AK-47 rifles and one SKS rifle), located in the green bag that Pericles had hidden underneath the tarp; and (3) another round of AK-47 ammunition, also in the green bag.

Pericles was arrested that day. A few weeks later, a federal grand jury indicted him for one count of possessing firearms and ammunition after being convicted of a felony offense, in violation of 18 U.S.C. § 922(g)(1). The district court appointed a federal public defender to represent Pericles. Pericles pleaded not guilty, and proceeded to trial.

## B. Trial

At trial, Pericles did not contest that he had previously been convicted of a felony offense. The government's evidence showed that Pericles was convicted in

3

2005 of "[f]irearm weapon possession by a convicted felon."[1]  During the government's case, Officer Cerra testified to the events described above and identified Pericles as the individual he observed in the backyard on April 1.

Pericles's defense was that he was not in the backyard on April 1 and that he did not possess the weapons found there.  Pericles did not testify.  One of his witnesses testified that Pericles was inside the residence when the police arrived, that Pericles never went into the backyard, and that he had never seen Pericles with a bag or with a gun.

After hearing this evidence, the jury found Pericles guilty.

## C.    Pericles's Motion for a New Trial

Afterwards, Pericles, through counsel, filed a post-trial motion for a judgment of acquittal or for a new trial.  In a supplement to that motion, Pericles's attorney informed the district court that after trial, "[o]n August 14, 2009, a polygraph examination was conducted . . . of Michael Pericles regarding the pertinent issues of the case."

The polygraph report showed that the examiner asked Pericles the following questions: (1) "Did you hide a green bag with assault rifles under a tarp in the backyard of 345 N.W. 59th Terrace, on April 1, 2009?" (2) "Did you put a green bag with assault rifles under a tarp and drop a handgun on the ground at 345 N.W.

---

[1]At trial, the government's witness testified that the conviction "appears to be 2004." Pericles was in fact arrested in 2004, however he was not convicted until 2005.

59th Terrace, on April 1, 2009?" and (3) "Were you involved in any way in hiding a bag with assault rifles under a tarp and dropping a gun from your waistband on April 1, 2009?" Pericles answered "No" to each of these questions, and the polygraph examiner reported that there was a 91.3 percent chance Pericles answered these questions truthfully.

The district court denied the motion, concluding that the polygraph test results were not "newly discovered evidence warranting a new trial," because the results "almost certainly would have been inadmissible." The district court pointed out that: (1) "there was no stipulation by the parties" as to the admissibility of polygraph evidence; (2) "Pericles did not testify, so the results could not have been used to corroborate his story" and (3) "the nature and phrasing of the polygraph questions would have raised serious questions about their admissibility."

## D.    Sentencing

Pericles's presentence investigation report ("PSI") set forth a base offense level of 26 pursuant to U.S.S.G. § 2K2.1(a)(1). Pericles received a two-level increase because his offense involved between three and seven firearms, see id. § 2K2.1(b)(1)(A), resulting in a total offense level of 28.

Pericles's criminal history score of 13 resulted in a criminal history category of VI. Pericles's scored offenses included, among other offenses: (1) a 2001 state conviction for possession of cocaine; (2) a 2001 state felony conviction for selling

5

cannabis within 1,000 feet of a high school; (3) a 2005 state felony conviction for unlawful possession of a firearm by a convicted felon; and (4) 2005 state felony convictions for battery on a law enforcement officer and resisting an officer with violence. Pericles's offense level of 28 and criminal history of VI yielded an advisory guidelines range of 140 to 175 months' imprisonment; but, the statutory maximum sentence for Pericles's offense was 120 months. See 18 U.S.C. § 924(a)(2). Thus, Pericles's guidelines range became 120 months. See U.S.S.G. § 5G1.1(a).

Pericles objected to the PSI's determination of his base offense level.[2] He also argued that the district court should sentence him below the guidelines range in light of "the unique circumstances of this case, among other things, the incident that lead to his arrest and the polygraph examination submitted to the court."

At sentencing, the district court heard expert testimony about Pericles's polygraph test. The district court imposed a sentence of 96 months' imprisonment, which was 24 months below the guidelines range of 120 months. The district court announced that it was overruling Pericles's objection to the base offense level. The district court stated that the polygraph examiner's testimony did not persuade the court.

---

[2]Pericles argued that his base offense level should be 24 pursuant to U.S.S.G. § 2K2.1(a)(2) because the trial evidence did not establish that any of the firearms he possessed were capable of accepting a large capacity magazine, as required for a base offense level of 26 under U.S.S.G. § 2K2.1(a)(1).

**E.    Direct Appeal**

Pericles timely filed a notice of appeal.  On direct appeal, this Court affirmed Pericles's conviction and sentence.  See United States v. Pericles, 382 F. App'x 801 (11th Cir. 2010).  Pericles raised one issue on direct appeal that was related to the issues in this § 2255 proceeding.[3]  Specifically, Pericles argued that the district court erred in denying his motion for a new trial based in part on the polygraph test results.  Id. at 805.

On this issue, we first stated that "[w]e have restricted the use of polygraph evidence to only two contexts: (1) when the parties stipulate in advance as to the test's circumstances and the scope of its admissibility, or (2) 'to impeach or corroborate the testimony of a witness at trial.'"  Id. at 806 (quoting United States v. Piccinonna, 885 F.2d 1529, 1535–36 (11th Cir. 1989) (en banc)).  We also noted that one of the requirements for a new trial based on newly discovered evidence is that "the evidence was of such a nature that a new trial would probably produce a new result."  Id. (quotation marks omitted); see United States v. Starrett, 55 F.3d

---

[3]Pericles's other direct appeal arguments were: (1) the statute under which he was convicted, 18 U.S.C. § 922(g)(1), "is unconstitutional because the possession of a firearm by a convicted felon does not have a substantial effect on interstate commerce"; (2) the government's evidence was insufficient to establish an interstate nexus in his case; (3) the district court erred in denying his motion for a new trial based on the exclusion of evidence of a robbery that allegedly occurred prior to the officers arriving at Pericles's home; (4) the prosecutor improperly vouched for the credibility of a testifying law enforcement officer; (5) his sentence was procedurally unreasonable based on various alleged guidelines calculations errors; and (6) his sentence was substantively unreasonable.  Pericles, 382 F. App'x at 804–09.  We rejected each claim.  See id.

1525, 1554 (11th Cir. 1995) (setting forth a five-part test for when a new trial is warranted based on circumstances coming to light after trial).

After reciting that law, we found no abuse of discretion in the district court's denial of Pericles's motion for a new trial. Given the polygraph test results would be inadmissible, the results did not meet the standard for a new trial based on newly discovered evidence. See id. ("We conclude from the record that the district court did not abuse its discretion by denying Pericles's motion for a new trial because . . . the results of Pericles's post-trial polygraph examination did not meet the test for newly discovered evidence.").

**F.     § 2255 Motion and Appeal**

In 2010, Pericles filed a pro se motion to vacate his sentence under § 2255 asserting seven claims of ineffective assistance of counsel. Without conducting an evidentiary hearing, a magistrate judge issued a report and recommendation ("R&R") recommending that the district court deny Pericles's motion. Pericles objected to the R&R, but the district court adopted the magistrate judge's recommendations.

Pericles filed in this court a pro se notice of appeal, and this Court granted him a certificate of appealability ("COA") as to whether the district court erred in determining without an evidentiary hearing that Pericles's attorney was not ineffective by failing to: (1) "review Pericles's criminal history before advising

8

him regarding whether to enter a plea or stand trial"; (2) "arrange for Pericles to take a polygraph examination prior to trial"; or (3) "properly advise Pericles regarding his right to testify at trial." This Court appointed Pericles counsel for purposes of this appeal.

## II.  DISCUSSION

Pericles's ineffective assistance claims are governed by the two-part framework established in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984).  Under <u>Strickland</u>, Pericles was required to show: (1) that his attorney's performance was deficient; and (2) that his attorney's deficient performance prejudiced him.  <u>Id.</u> at 687, 104 S. Ct. at 2064.  Pericles has not made these showings as to any of the claims at issue here.[4]

### A.    Pericles's Criminal History

Pericles claims that his attorney was ineffective by not requesting "a full, complete and legible record of [Pericles's] prior convictions to be produced by the government."  Pericles asserts that obtaining his criminal record would have allowed his attorney to adequately advise him "concerning the election of trial."

---

[4]In a § 2255 proceeding, this Court reviews legal issues <u>de novo</u> and findings of fact for clear error.  <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004).  We review for abuse of discretion a district court's decision not to conduct an evidentiary hearing on a § 2255 motion. <u>Aron v. United States</u>, 291 F.3d 708, 714 n.5 (11th Cir. 2002).  A district court need not conduct an evidentiary hearing "where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous." <u>Id.</u> at 715.

Pericles has not shown his attorney performed unreasonably.  In addition, Pericles does not even allege that he did not know his own criminal history.  Had Pericles wished for his attorney to evaluate what effect his convictions might have on any sentence he would receive, he could have simply told his attorney about his personal criminal history.  He did not need for his attorney to go searching for information that he himself possessed.

Alternatively, Pericles cannot show prejudice on this claim.  To establish prejudice based on ineffective assistance in deciding whether to plead guilty or go to trial, a defendant "'must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded guilty and would [not] have insisted on going to trial.'"  Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995) (alterations in original) (quoting Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985)).  A defendant's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish" prejudice.  Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991).

Even assuming his attorney did not review his criminal history, and this constituted unreasonable performance, Pericles has not shown prejudice.  As the magistrate judge noted, "Pericles has maintained his innocence throughout the underlying criminal proceedings" and "even submitted to a polygraph examination after trial to show he was innocent."  In light of Pericles's insistence that he is

innocent of the offense, there is no reasonable probability that he would have pled guilty if, before Pericles pled, his attorney had reviewed his criminal history. See Osley v. United States, --- F.3d ---, 2014 WL 1399419, at *7 (11th Cir. Apr. 11, 2014) (defendant claiming ineffective assistance of counsel based on attorney's failure to advise him that he faced a mandatory minimum sentence could not show prejudice in part because his "claim that he would have pled guilty had he been properly informed [was] . . . undermined by his repeated claims of innocence").

On appeal, Pericles contends that, had his attorney investigated Pericles's criminal history, Pericles "would have pleaded guilty and not gone to trial—even if he was innocent." To the extent that Pericles contends he would have sought to enter an Alford plea of guilty while maintaining his innocence,[5] that argument does not establish prejudice for two reasons. First, Pericles cannot establish that the district court would have accepted an Alford plea in his case. See United States v. Gomez-Gomez, 822 F.2d 1008, 1011 (11th Cir. 1987) ("Though a judge may enter judgment upon a guilty plea offered under [Alford], he is not required to do so."). Second, Pericles's assertion that he would have entered an Alford plea is merely an unsupported "after the fact" statement, insufficient to establish prejudice. See Diaz, 930 F.2d at 835.

**B.    Polygraph Examination Prior to Trial**

---

[5]See North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160 (1970).

11

Pericles also claims that his counsel was defective by not arranging for Pericles to take a polygraph test until after trial.

It was not unreasonable for Pericles's attorney to not arrange for him to take a polygraph test, as, subject to a few exceptions, polygraph tests are generally inadmissible.  See Piccinonna, 885 F.2d at 1536.  Pericles's attorney's performance was not deficient based on a failure to obtain evidence that the attorney reasonably anticipated could not be used at trial.

In any event, Pericles cannot show prejudice.  The polygraph tests results would not have been admissible at trial, and they would not have caused the government to dismiss the charges against Pericles.

As for this first point, polygraph test results are admissible in two circumstances: (1) "when both parties stipulate in advance as to the circumstances of the test and as to the scope of its admissibility"; or (2) when the evidence is "used to impeach or corroborate the testimony of a witness at trial."  Id.

Here, Pericles concedes that "the government probably would not have stipulated to the introduction of the polygraph."  The polygraph evidence also would not have come in as corroboration or impeachment evidence.  Pericles did not testify and thus could not have used polygraph evidence to corroborate or impeach testimony never given.  Even if Pericles had testified, Pericles has not shown the polygraph evidence would have been admitted in any event.  As the

district court already noted in denying Pericles's motion for a new trial, "the nature and phrasing of the polygraph questions would have raised serious questions about their admissibility under the Federal Rules of Evidence."[6]  And we also reject Pericles's claim that the results of the polygraph test of him could have been used to impeach other witnesses.

As for the second point, Pericles points to nothing in the record remotely indicating that the government would have moved to dismiss the indictment in light of the polygraph test results.

## C.    Right to Testify

Pericles's next claim is that his attorney was ineffective by advising him "'if you take the stand they can give you more time.'"

Pericles argues that his attorney's above statement—that "they can give you more time"—resulted in his attorney's violating his right to testify.  We disagree. First, the record does not reflect that the attorney's advice was anything other than wise guidance.  Had Pericles testified and then been convicted, he might have: (1) not received the 24-month downward variance the district court imposed; or (2)

---

[6]Pericles does not argue that his attorney was deficient for not arranging for him to take a better, more persuasive polygraph test.  Pericles's argument is only that his attorney should have obtained the polygraph test here prior to trial, rather than after trial.

13

been prosecuted for perjury.[7]  In either instance, he could have received "more time," as his attorney advised him.

Alternatively, Pericles cannot show prejudice.  In a case like this one, when a defendant claims that his attorney denied him his right to testify, the defendant must establish prejudice by showing that "there is at least a reasonable probability that, but for counsel's [interference with the defendant's right to testify], the result in th[e] case would have been different."  Nichols v. Butler, 953 F.2d 1550, 1554 (11th Cir. 1992) (en banc) (in a "very close case" where the only evidence linking the defendant to the robbery "was the eyewitness identification of him by a store employee who had glimpsed him only briefly," there was "at least a reasonable probability" that, had the defendant's attorney not threatened to withdraw mid-trial if the defendant testified, the result in the case would have been different).

Pericles cannot show a reasonable probability that the outcome of his trial would have been different had he testified.  Officer Cerra testified about his prolonged observations of Pericles and then identified Pericles as the person he observed possessing firearms and ammunition.  Three other investigators offered testimony supporting Officer Cerra's statements.

---

[7]The government argues that giving false testimony might have subjected Pericles to an obstruction of justice enhancement to his offense level under § 3C1.1 of the Sentencing Guidelines.  Although this would be true in the normal case, Pericles's guidelines range was 120 months—the statutory maximum.  Thus, had the district court determined that Pericles obstructed justice by giving false testimony, his guidelines range would have remained the same.

14

In fact, Pericles's testimony could have even hurt his case. As noted, the government agreed to stipulate to the fact that Pericles was previously convicted of a felony, and the jury did not learn of the rest of Pericles's extensive criminal history. If Pericles had testified, the government undoubtedly would have cross-examined him about the five state <u>felony</u> convictions he sustained over an eight-year criminal career. <u>See</u> Fed. R. Evid. 609(a)(1). The jury's impression of Pericles would likely have been unfavorable.

For any number of reasons, Pericles has not shown a reasonable probability that the jury would have decided differently if Pericles had testified in his own defense.

## III.  CONCLUSION

In light of the foregoing, Pericles did not set forth a valid claim for ineffective assistance of counsel, and the district court did not abuse its discretion by denying Pericles's § 2255 motion without an evidentiary hearing. We affirm.

**AFFIRMED.**

15