Clarence Edward HILL, Petitioner–
Appellant,

v.

Michael W. MOORE, Secretary, Flori-
da Department of Corrections,
Respondent–Appellee.

Nos. 93–2616, 97–2140.

United States Court of Appeals,
Eleventh Circuit.

May 14, 1999.

916

Carolyn M. Snurkowski, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, FL, for Moore.

Gregory C. Smith, Capital Collateral Counsel-Northern Region, Tallahassee, FL, Gail E. Anderson, Sp. Asst. CCRC, Greensboro, FL, for Hill.

Before HATCHETT, Chief Judge, and TJOFLAT and EDMONDSON, Circuit Judges.

TJOFLAT, Circuit Judge:

In these consolidated appeals, the petitioner, a Florida death row inmate, asks that we reverse the district court's refusal to grant a writ of habeas corpus either setting aside his conviction or his sentence for murder. We affirm.

## I.

### A.

In the early afternoon of October 19, 1982, after stealing a pistol and an automobile, petitioner and an accomplice, Cliff Jackson, robbed a savings and loan association in Pensacola, Florida. When police arrived at the scene and foiled their robbery plans, petitioner and Jackson fled. Jackson exited the savings and loan through the front door and was immediately apprehended. As the police placed Jackson in custody, petitioner, who had fled through the rear of the building, approached the arresting officers from behind and shot them, killing one officer and wounding another. A gun battle ensued, during which police shot petitioner five times. Though wounded, petitioner fled the scene. The police apprehended him a short time later.

Following his arrest, an Escambia County grand jury indicted petitioner on one count of first degree murder, one count of

attempted first degree murder, three counts of armed robbery, and one count of possession of a firearm during a felony.[1] A petit jury found him guilty on all counts. Because the State sought the death penalty on the murder count, the jury, after returning its verdicts, reconvened for the sentencing phase of the case. At the conclusion of that proceeding, the jury recommended that petitioner be sentenced to death. At the sentencing hearing held at a later date, the trial judge followed the jury's recommendation and imposed a death sentence.[2]

On direct appeal, the Florida Supreme Court affirmed petitioner's convictions, but

vacated his death sentence and remanded the case for a new sentencing proceeding because the trial judge failed to dismiss a juror who was predisposed to recommend a death sentence. *See Hill v. State*, 477 So.2d 553, 557 (Fla.1985). On remand, a new judge empaneled a jury and the sentencing phase of the case was relitigated. The new jury, like its predecessor, recommended the death sentence. At the ensuing sentencing hearing, the court followed the jury's recommendation and imposed the death penalty.[3]

Again petitioner appealed his sentence of death, but this time the Florida Su-

---

1. The grand jury also indicted Jackson for the same offenses. Prior to trial, Jackson and the State entered into a plea agreement, under which Jackson pled guilty to first degree murder and was sentenced to prison for life. He subsequently testified as a defense witness in the sentencing phase of petitioner's trial.

2. In Florida, once a defendant is convicted of capital murder, the trial court must engage in a separate sentencing phase to determine whether death is in fact the appropriate sentence. In order for the defendant to receive the death penalty, the State must establish the existence of one or more statutory aggravating factors under Fla. Stat. ch. 921.141(5) (1997). If aggravating circumstances are established, the defendant may offer evidence of the existence of one or more statutory mitigating factors, *see* Fla. Stat. ch. 921.141(6), and any other non-statutory mitigating evidence he wishes to introduce. The jury, which renders an advisory sentence, and the trial judge, who decides the actual sentence, must weigh the aggravating and mitigating circumstances against each other in determining the proper sentence.

   Before sentencing petitioner, the court in this case found that the evidence established five aggravating circumstances: (1) that the defendant had been convicted of a prior felony involving the threat of violence to another; (2) in committing the murder, the defendant knowingly created a great risk of death to many persons; (3) the murder was committed while the defendant was fleeing from an attempted robbery; (4) the murder was committed for the purpose of avoiding arrest; and (5) the murder was committed in a "cold, calculated, and premeditated manner." *See* Fla. Stat. ch. 921.141(5)(b), (c), (d), (e), (I). The court also found one statutory mitigating circumstance, the defendant's young age, 23.

   *See* Fla. Stat. ch. 921.141(6)(g). Finally, although petitioner had presented several items of non-statutory mitigating evidence, all relating to his upbringing and background, the court found that such evidence and petitioner's age "d[id] little to mitigate the circumstances of the killing." Concluding that the aggravating circumstances outweighed the mitigating circumstances in the case, the court imposed the death penalty.

   The court imposed prison sentences for the other offenses—attempted murder, armed robbery, and possession of a firearm during commission of a felony—of which petitioner was convicted. Neither those convictions nor the corresponding sentences are before us.

3. The trial judge found the same aggravating circumstances the previous judge had found. *See supra* note 2. He also found a statutory mitigating circumstance in the defendant's age. After summarizing the other evidence petitioner adduced in mitigation, all of a non-statutory nature, the court found that it was insufficient to amount to mitigation. The court disposed of this evidence with the following statement on the record:

   "Any other aspect of the defendant's character or record and any other circumstances of the offense—several witnesses, James Wilson knew the defendant for 19 years and was a school mate; Lucille Tillie knew the defendant and his family for 19 years; Miss Petway knew the defendant and his family for a number of years in Mobile, since 1968; Grace Singleton, 79 years old, knew the defendant when he was a little boy; Patsy McCaskill, his sister-in-law, knew him about six years; and the mother and father of the defendant testified as to the particulars of his character when he was a boy for honesty and peacefulness.

preme Court affirmed. *See Hill v. State,* 515 So.2d 176 (Fla.1987). The court did so although the evidence did not support one of the aggravating circumstances—that the murder was cold, calculated, and premeditated. Given the existence of the four other aggravating circumstances and one statutory mitigating circumstance (petitioner's age), the trial judge's consideration of the erroneous factor was "not such a change under the circumstances of this sentencing proceeding that its elimination could possibly compromise the weighing process of either the jury or the judge." *Id.* at 179.

After unsuccessfully petitioning the United States Supreme Court for a writ of certiorari, petitioner moved the trial court, pursuant to Fla. R.Crim. P. 3.850, to vacate his capital conviction and sentence. He contended that his conviction and sentence should be set aside because of constitutional errors committed by the trial court and the Florida Supreme Court, and because his trial attorneys had rendered ineffective assistance of counsel in both guilt and sentencing phases of his case. The trial court summarily denied relief with respect to petitioner's claims of trial court and supreme court error on the ground that those claims were procedurally defaulted (for failure to raise those claims on direct appeal). As for petitioner's ineffective assistance of counsel claim, the court concluded that petitioner's allegations, when considered in the light of the record of his prosecution, were insufficient as a matter of law. The court therefore denied relief on that claim without holding an evidentiary hearing. On appeal, the Florida Supreme Court affirmed. *See Hill v. Dugger,* 556 So.2d 1385 (Fla.1990).

At that point, petitioner repaired to the United States District Court for the Northern District of Florida for relief. He petitioned that court to grant a writ of habeas corpus setting aside his murder conviction and corresponding death sentence. His petition presented several claims for relief.[4] The district court de-

On cross-examination Tillie didn't know the defendant had been arrested for robbery in Mobile, as did Petway. Singleton was not aware of the robbery. McCaskill did not know about the robbery. The Court is of the opinion that this evidence is insufficient to support [the finding of any non-statutory mitigating factors]."
Thereafter, the court balanced the aggravating circumstances against the defendant's age, found that the former outweighed the latter, and imposed a death sentence.

4. Petitioner challenged his conviction and/or sentence on numerous constitutional grounds, some of which we have restated for sake of clarity: (1) the trial court's refusal to grant him a change of venue denied him a fair trial; (2) the prosecutor's comments in the presence of the jury during the guilt and sentencing phases of the case denied him a fair trial; (3) the prosecutor knowingly presented false testimony to the jury during the guilt phase of the trial; (4) the trial court erred when it refused to disclose questions the jury submitted to the court during deliberations in the sentencing phase of the trial; (5) trial counsel's performance was ineffective in both phases of the trial; (6) the trial court, sustaining the State's objection on relevancy grounds, precluded the jury from receiving non-statutory mitigating evidence concerning petitioner's background; (7) the trial court, in imposing sentence, refused to consider non-statutory mitigating evidence concerning petitioner's background; (8) the trial court refused petitioner's request that it instruct the jury that it could consider as a statutory mitigating circumstance whether petitioner "acted ... under the substantial domination of [Jackson]," Fla. Stat. ch. 921.141(6)(e) (1997); (9) the trial court improperly shifted the burden of proof to petitioner to demonstrate that the death sentence was inappropriate; (10) in selecting the jury to retry the sentencing phase of petitioner's case, the trial court excluded prospective jurors in violation of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); (11) in selecting the jury to retry the sentencing phase of petitioner's case, the prosecutor precluded blacks from serving on the jury in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); (12) the cold, calculated, and premeditated aggravating circumstance was unconstitutionally vague as applied in violation of the Eighth and Fourteenth Amendments; (13) the trial court erred in instructing the jury that sympathy and mercy were irrelevant; (14) the trial court erred in permitting the jury to "double" aggravating circumstances in making its sentencing recommendation; (15) petitioner's sentence was

nied relief with respect to the conviction but issued the writ with respect to the sentence.[5] The court held that the trial judge, in sentencing petitioner, failed to recognize as mitigating evidence several aspects of petitioner's background.[6] Thereafter, the Florida Supreme Court, in affirming petitioner's sentence on harmless error grounds, failed to cure this error by acknowledging the presence of such mitigating factors and placing them in the sentencing balance; that is, by determining whether the aggravating circumstances outweighed the mitigating circumstances (in addition to the statutory mitigating factor, age, which the trial court found). As the district court noted, *Parker v. Dugger*, 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991), requires that a reviewing court in a "weighing" jurisdiction, such as Florida, engage in such weighing, and explicitly state that it is doing so in determining whether the trial court would have imposed the death sentence had it considered the mitigating evidence.

based on an unconstitutional prior conviction; (16) the trial court erred in permitting the State to present to the jury in both phases of the trial evidence of petitioner's "other crimes and bad character"; (17) the state court invoked non-existing procedural bars to preclude review of some of petitioner's claims of trial and appellate error; and (18) the Florida Supreme Court erred in refusing to remand his case for resentencing after striking down one of the aggravating circumstances (cold, calculated, and premeditated circumstance) relied on by the trial judge in imposing the death sentence.

5. With respect to the claims (4), (9), (11), (12), (13), (14), and (15) listed in note 4, *supra*, the district court denied relief on the ground that the claims were procedurally defaulted. That is, petitioner had not presented them to the state courts seasonably as required by state law. The court denied relief on the remaining claims listed in note 4, *supra*, with the exception of claims (7) (on which the court granted relief) and (18) (which the court did not adjudicate), on the ground that the record foreclosed them as a matter of law.

6. The district court found the following nonstatutory factors in the record: (1) that petitioner was known by his neighbors and family

The State appealed the district court's decision regarding the death sentence; petitioner cross-appealed the court's denial of relief on other grounds (with respect to both his murder conviction and his sentence). While the appeal was pending, the State dismissed its appeal, and petitioner moved the Florida Supreme Court to reopen his direct appeal. We stayed our consideration of petitioner's cross-appeal pending the supreme court's decision.

The Florida Supreme Court reopened petitioner's appeal from his death sentence, limiting its review to the question whether it had conducted the proper harmless error analysis in affirming petitioner's death sentence. The court affirmed the sentence. Following that decision, petitioner filed an amended habeas petition in the district court, challenging the supreme court's decision affirming his sentence. The district court, concluding that the supreme court had satisfied the dictates of *Parker*, denied relief. Petitioner now appeals.

to be a caring and nonviolent person; (2) that, as a teenager, he volunteered to take care of a family friend's brain-damaged child and helped a disabled, elderly neighbor by taking her to church and running errands for her; (3) that he had a trouble-free history throughout his years in school and in the neighborhood, until age twenty-three; (4) that he held steady employment as a cook from the time he was in the ninth grade until he turned to drugs and crime at the age of twenty-three; (5) that he consistently helped his parents, doing chores around the house and contributing some of his earnings toward support of the large family; and (6) that he attended school until the twelfth grade but never progressed beyond a fifth grade level in reading and verbal ability.

With respect to the statutory mitigating circumstance provided by Fla. Stat. ch. 921.141(6)(e) (1997), "Substantial Domination," the district court concluded that if the trial court committed error in failing to instruct the jury on that mitigating circumstance, the error was harmless. The court did not mention the possibility that petitioner was acting under Jackson's domination in listing the mitigating circumstances that the trial court had overlooked in imposing sentence.

### B.

As noted above, petitioner's habeas petition to the district court presented eighteen constitutional claims. The district court rejected some of the claims without reaching the merits because they had been defaulted: petitioner presented the claims in his Rule 3.850 petition for post-conviction relief without first having raised them on direct appeal. Of the claims the district court considered, but rejected on the merits, six are before us on appeal. One claim questions the court's refusal to set aside petitioner's murder conviction; the rest concern his sentence. Before addressing these claims, we consider petitioner's argument that the district court's reasoning in rejecting some of his claims on the basis of procedural default was fallacious, and that the court therefore should have entertained the claims on the merits.

■ Petitioner's argument is based on the notion that the Florida Supreme Court incorrectly limited the scope of his reopened direct appeal from his sentence. In his motion to reopen his direct appeal, which the State did not oppose, petitioner urged the supreme court to consider all issues he wished to raise, including claims raised and rejected previously on direct appeal (from both his conviction and sentence) and claims procedurally defaulted because he had not previously raised them.

The supreme court limited its review, however, to the issue of whether it had conducted a proper harmless error analysis. *See infra* part III.A. Because the State failed to oppose his motion to reopen the direct appeal, petitioner now contends that the supreme court erred in not considering all of the issues he raised in that motion, and therefore that this court should now review all of his claims of error. We are not persuaded. The supreme court was certainly within its province in limiting the scope of the reopened direct appeal, notwithstanding petitioner's request that the court perform a more comprehensive review, and we will not disturb its judgment.[7]

■ Having concluded that the district court did not err in honoring Florida's procedural default rule, we proceed to the claims the district court rejected on the merits.[8] In assessing each of petitioner's claims, we review the district court's findings of fact for clear error, while we review all questions of law *de novo*. *See Byrd v. Hasty*, 142 F.3d 1395, 1396 (11th Cir.1998). We begin, in part II, with the challenge to petitioner's conviction.

### II.

■ Petitioner contends that the district court should have set aside his murder conviction and ordered his release unless the State afforded him a new trial, on the

---

**7.** It is obvious from a reading of the district court's order granting the writ that the court contemplated one of two results: either the Florida Supreme Court would conduct the harmless error analysis *Parker* requires, or petitioner would be accorded a new sentencing proceeding in the state trial court. The former result obtained when petitioner, with the States's consent, moved the supreme court to reopen the direct appeal in order to review his sentence.

**8.** The claims the district court properly declared procedurally defaulted are as follows: (1) that the trial judge improperly refused to inform petitioner of the substance of two questions the jury asked during deliberations in the sentencing phase of the trial (claim 4); (2) that the trial court, in the sentencing phase, permitted the prosecutor peremptorily

to challenge prospective jurors on the basis of their race (claim 11); and (3) that the trial court improperly doubled two aggravating factors at the sentencing phase of petitioner's trial (claim 14). A fourth claim—that one or more jurors in the sentencing phase of the trial had a predisposition in favor of the death penalty—is also defaulted, because petitioner failed to raise that issue during his direct appeal. In fact, petitioner did not even raise that issue in his initial petition for habeas relief; rather, he raised it for the first time in his reopened direct appeal.

Because petitioner has failed to demonstrate cause for his defaults and resulting prejudice, *see Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991), we therefore do not discuss those claims further in this opinion.

ground that his counsel's performance in the guilt phase of the case fell below the standard required of counsel under the Sixth and Fourteenth Amendments.[9] The district court concluded that the record of petitioner's criminal prosecution in the guilt phase foreclosed this ground as a matter of law; therefore, the court did not hold an evidentiary hearing on the ineffective assistance claim.

Whether petitioner's counsel were ineffective is a mixed question of law and fact subject to *de novo* review. *See Mills v. Singletary*, 161 F.3d 1273, 1285 (11th Cir.1998). To be entitled to an evidentiary hearing on this matter, petitioner must proffer evidence that, if true, would entitle him to relief. *See Baldwin v. Johnson*, 152 F.3d 1304, 1312 (11th Cir.1998). To obtain relief, he must demonstrate both (1) that his counsel's performance was deficient, in that it "fell below an objective standard of reasonableness," and (2) that he suffered prejudice as a result of that deficient performance. *See Mills*, 161 F.3d at 1285 (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984)). Prejudice is defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

In his testimony before the jury during the guilt phase of the trial, petitioner said that he was under the influence of cocaine at the time of the bank robbery. In his habeas petition to the district court, petitioner alleged that he was so high when the robbery occurred that he did not know what he was doing. According to his peti-

tion, he began snorting cocaine the morning of the robbery and continued to snort until he and Jackson arrived at the bank, around 2:00 p.m. Allegedly, several witnesses, including Jackson, would attest to his cocaine use over an extended period of time, although, with the exception of Jackson, none could testify that he used drugs that day.[10] Petitioner's trial attorneys did not seek an instruction informing the jury that if it believed petitioner's testimony that he was under the influence of cocaine when he committed the murder, it could consider that fact in determining whether petitioner possessed the criminal intent required for conviction. Petitioner contends that counsel did not seek such instruction because they failed to prepare for such defense and to adduce the evidence that would have established it.

According to petitioner, counsel were deficient in two respects. First, they failed to have him elaborate concerning the amount of cocaine he had snorted before he entered the bank, and they failed to call Jackson to the stand; Jackson would have corroborated his testimony that he was under the influence of cocaine at the time of the offense. Other witnesses (those referred to above) could have been called who would have testified that petitioner was an habitual drug user, thus creating the inference that he was testifying truthfully when he said that he acted under the influence of cocaine. Second, counsel failed to discredit the State's chemist, who testified that the analysis of petitioner's blood that was taken (an undisclosed period of time) after his arrest showed no evidence of cocaine. Petitioner submits

9. The Sixth Amendment guarantees every criminal defendant the right to have "the assistance of counsel for his defense." The Supreme Court has interpreted this Amendment to require more than just the physical presence of an attorney with the accused; instead, the Sixth Amendment requires meaningful representation—"the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 685–86, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674

(1984). The Fourteenth Amendment makes the Sixth Amendment applicable in state court.

10. Petitioner also testified at the sentencing phase of his trial. There, contrary to what these witness would have said if called to testify, he told the jury "I haven't been doing [cocaine] long, and I never run into it, you know. I was trying something new."

that the test the chemist performed would not show the small recreational amounts of cocaine he had ingested that day. In sum, had counsel elicited from petitioner the amount of cocaine he had snorted the day of the robbery, presented witnesses to attest to petitioner's drug habit, and demonstrated the inadequacy of the chemist's blood analysis, the court would have been required to charge the jury that voluntary intoxication could negate criminal intent.

The district court, bypassing *Strickland*'s first prong, moved directly to the prejudice prong of petitioner's ineffective assistance claim and concluded that petitioner's allegations demonstrated no prejudice. They failed to demonstrate a reasonable probability that, absent counsel's alleged deficiency, the outcome of the trial would have been different.

■ We agree with the district court. The only evidence petitioner proffered (in his petition) regarding his drug use that is even remotely relevant to our inquiry—that he used some amount of cocaine during the hours preceding the robbery and murder—would not warrant a jury instruction regarding voluntary intoxication. While petitioner testified at trial that he was under the influence of cocaine when he arrived at the bank, nothing in the testimony he has proffered in his petition (and that counsel should have introduced) would permit a jury to find that he was "so intoxicated that he [was] unable to form an intent to kill." *See Wiley v. Wainwright*, 793 F.2d 1190, 1194 (11th Cir.1986) (noting that under Florida law the person proffering voluntary intoxication as a defense must make such a showing). In sum, no evidentiary hearing is warranted on the issue of counsel's effectiveness at the guilt

phase of the trial, for the proffered testimony, even if true, would not entitle petitioner to relief. *See Baldwin*, 152 F.3d at 1312.

### III.

We now address petitioner's challenges regarding the sentencing phase of his case. He presents the following claims: (1) that the Florida Supreme Court conducted a deficient harmless error analysis after striking one of the aggravating factors found by the trial judge in imposing the death sentence; (2) that the trial court erred (and the supreme court failed to cure the error) in not placing in the sentencing balance all of the non-statutory mitigating evidence petitioner presented; (3) that his counsel's performance was constitutionally deficient; (4) that the trial court improperly refused to permit petitioner to present certain mitigating evidence to the jury, in violation of *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); (5) that the trial court failed to instruct the jury on the statutory mitigating circumstance of "substantial domination," *see* Fla. Stat. ch. 921.141(6)(e) (1997);[11] and (6) that the prosecution made improper remarks in the presence of the jury that rendered petitioner's sentence unreliable and thus fundamentally unfair. We address these claims in order.

### A.

■ Petitioner claims that the Florida Supreme Court, after invalidating one of the aggravating factors the trial judge relied upon in imposing the death penalty (the cold, calculated, and premeditated factor), failed to conduct the proper harmless error analysis prescribed by *Sochor v.*

---

11. In both his petition for habeas relief and his brief on appeal petitioner combined claims (4) and (5) into one *"Lockett"* claim. Claim (5), however, does not involve evidence that defense should have been permitted to put before the jury and that the jury should have been permitted to consider; all the *evidence* tending to support petitioner's claim of substantial domination (by Jackson) was

properly before the jury (and the jury was instructed that it could consider any evidence that tended to mitigate defendant's criminal actions). Rather, claim (5) merely involves the failure of the trial court to give a jury instruction on the statutory mitigating factor of "substantial domination." Because claims (4) and (5) are distinct, we discuss them separately in this opinion.

*Florida,* 504 U.S. 527, 539–40, 112 S.Ct. 2114, 2122–23, 119 L.Ed.2d 326 (1992), and *Clemons v. Mississippi,* 494 U.S. 738, 752–54, 110 S.Ct. 1441, 1450–51, 108 L.Ed.2d 725 (1990). Petitioner further claims that the trial court erred in failing to place unrebutted nonstatutory mitigating factors into the sentencing balance, and that the supreme court failed to cure that error in its review of his sentence. *See Parker v. Dugger,* 498 U.S. 308, 322–23, 111 S.Ct. 731, 740, 112 L.Ed.2d 812 (1991).

The district court has twice had occasion to examine petitioner's claims. At its initial proceeding, the district court granted the petitioner's habeas writ, concluding that the Florida Supreme Court's harmless error analysis was deficient because it had deferred to the trial court's erroneous conclusion that the evidence regarding petitioner's background was insufficient to establish mitigation. The district court also questioned the supreme court's decision that consideration of the erroneous "cold, calculated, and premeditated" aggravating circumstance at sentencing was harmless.[12] Thereafter, the Florida Supreme Court reopened petitioner's direct appeal for the purpose of addressing the district court's concerns. The supreme court concluded

that any error on the part of the trial judge was "harmless beyond a reasonable doubt," and "again [held] that death is the appropriate sentence in this case." *Hill v. State,* 643 So.2d 1071, 1074 (Fla.1994). Following the supreme court's decision, the district court again entertained arguments on whether to grant the writ because of the supreme court's deficient harmless error analysis; the district court denied the writ, and petitioner now appeals.

In order to determine whether either of petitioner's first two claims (of deficiency in the sentencing phase of his case) have merit, we must examine what the Florida Supreme Court actually did in affirming the death sentence after reopening petitioner's direct appeal. The supreme court reopened the direct appeal for a limited purpose—to "reexamine the harmless error analysis [it] conducted in [its previous opinion] based on the entire record of this case." *Id.* The court proceeded as follows:

> As indicated previously, four of the five aggravating circumstances found by the trial judge remain valid. Even when we consider the statutory mitigating circumstance of [petitioner's] age of twenty-three at the time the murder was

---

12. The court withheld judgment, however, on whether the supreme court's analysis satisfied the United States Supreme Court's requirements as to harmless error analysis because it was already granting the writ on other grounds. In *Clemons v. Mississippi,* 494 U.S. 738, 754, 110 S.Ct. 1441, 1451, 108 L.Ed.2d 725 (1990), the Supreme Court stated that it is constitutionally permissible for an appellate court in capital proceedings in which error has occurred to engage in either (1) a reweighing of the aggravating and mitigating circumstances or (2) a harmless error analysis. In *Sochor v. Florida,* 504 U.S. at 539–40, 112 S.Ct. at 2123, the Supreme Court, on direct appeal, concluded that the correct harmless error analysis to be conducted by a state supreme court is the heightened "harmless beyond a reasonable doubt standard" of *Chapman v. California,* 386 U.S. 18, 22–24, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967). Subsequent to the *Sochor* decision, the Court adopted a less stringent harmless error analysis for collateral review of "constitutional trial error" (constitutional errors made during the

trial, such as commenting on a defendant's post-Miranda silence in front of the jury, as opposed to "structural defects in the constitution of the trial mechanism," such as deprivation of counsel). *See Brecht v. Abrahamson,* 507 U.S. 619, 629, 637–38, 113 S.Ct. 1710, 1717, 1721–22, 123 L.Ed.2d 353 (1993). The *Brecht* decision is inapposite in our collateral review, however, because we are not conducting the same review of the state trial court proceedings that the Florida Supreme Court conducted (which the *Brecht* Court was trying to avoid); rather, we are reviewing whether the Florida Supreme Court conducted the proper analysis in *its* review of the trial court proceedings, as prescribed by the Supreme Court in *Clemons* and *Sochor.* Of course, because we conclude that the Florida Supreme Court reweighed the aggravating and mitigating circumstances in this case (in accordance with the first alternative in *Clemons* ), we need not discuss the sufficiency of the Florida Supreme Court's harmless error analysis.

committed and the uncontroverted evidence of non-statutory mitigating circumstances presented by [petitioner] at sentencing regarding his background, we must conclude that the trial judge's error in finding that the murder was cold, calculated, and premeditated, was harmless beyond a reasonable doubt. In aggravation, the evidence reflects that [petitioner], during the course of a robbery, killed a police officer so that he and his accomplice could escape prosecution. Moreover, [petitioner] had previously been convicted of robbery with a firearm, and, in this case, he knowingly created a great risk of death to many persons by firing a number of shots in a populated area.

*Id.*

The court, with this language, clearly was attempting to satisfy the "harmless beyond a reasonable doubt" test of *Chapman;* however, it continued with its analysis, stating: "We again hold that death is the appropriate sentence in this case because no reasonable possibility exists that the evidence presented in mitigation, such as [petitioner's] age, his good work history, and his helpful and nonviolent nature, is sufficient to outweigh the four valid aggravating circumstances." *Id.* (footnote omitted). Not only was this language superfluous in the context of the harmless error analysis, it was of a different nature altogether. The phrase "[w]e again hold that death is the appropriate sentence" indicates a fundamentally different analysis from the previous harmless error analysis; it indicates that the supreme court made

its own judgment as to petitioner's sentence.[13] The court made an independent assessment of the aggravating and mitigating circumstances in petitioner's case, weighed those factors against each other, and reached the conclusion that death was the appropriate sentence. We therefore conclude that the Florida Supreme Court reached alternative holdings in petitioner's case: first, that the trial judge's error in using the "cold, calculated, and premeditated" aggravating factor in sentencing petitioner was harmless beyond a reasonable doubt; and second, that, after reweighing the valid aggravating circumstances and all the mitigating factors, death was the appropriate sentence in petitioner's case.

Supreme Court precedent is clear that a reviewing court may conduct either type of analysis the Florida Supreme Court utilized in affirming petitioner's death sentence. *See Sochor,* 504 U.S. at 532, 112 S.Ct. at 2119 ("While federal law does not require the state appellate court [in a weighing state like Florida] to remand for resentencing [after concluding that the trial court included in its weighing process an invalid aggravating factor], it must, short of remand, either itself reweigh without the invalid aggravating factor or determine that weighing the invalid factor was harmless error."); *Parker,* 498 U.S. at 320–21, 111 S.Ct. at 739. That being the case, the Florida Supreme Court acted within its province when it reweighed the aggravating and mitigating circumstances in petitioner's case and concluded that death was the appropriate sentence. By reweighing all the factors, petitioner received all he could hope for—an independent weighing

---

**13.** We realize that the Florida Supreme Court has stated that it does not independently reweigh aggravating and mitigating circumstances when reviewing a death sentence. *See, e.g., Hudson v. State,* 538 So.2d 829, 831 (Fla.1989); *Brown v. Wainwright,* 392 So.2d 1327, 1331 (Fla.1981). The Florida Supreme Court certainly has the power to reconsider its role in reviewing capital sentences, however, for it has the last word as to the nature of its role. Given the clear and qualitative language of its opinion as to the appropriateness of the sentence in petitioner's case, we

conclude that the supreme court did in fact reweigh the aggravating and mitigating circumstances in petitioner's case. Both the Supreme Court and this court have noted that, on occasion, the Florida Supreme Court has reweighed the aggravating and mitigating circumstances in determining that death is the appropriate sentence in the case. *See Wainwright v. Goode,* 464 U.S. 78, 86, 104 S.Ct. 378, 383, 78 L.Ed.2d 187 (1983); *Bolender v. Singletary,* 16 F.3d 1547, 1568 (11th Cir.1994).

of the aggravating and mitigating circumstances in his case, which excluded the invalid aggravating circumstance (that the murder was cold, calculated, and premeditated) and included all of the nonstatutory mitigating evidence he presented during sentencing phase of his case. We therefore will not upset the decision of the Florida Supreme Court on this matter.[14]

### B.

▮▮ Petitioner contends that his counsel were ineffective during the sentencing phase of his trial, primarily due to their failure to offer evidence of petitioner's drug use on the day of the murder—this time as a mitigating circumstance rather than as a defense to premeditated murder. Petitioner contends further that counsel were ineffective for failing to present background evidence to the court-appointed psychologist (thereby "causing" an incorrect evaluation) and for failing to pursue evidence of his history of drug and alcohol abuse and evidence of his abusive and neglect-ridden childhood. The district court concluded that none of this evidence was "so compelling that it would have changed the result of the proceedings in this case."

▮▮ We agree. As we indicated earlier, Strickland requires that a petitioner demonstrate a reasonable probability that the proffered evidence would have changed the result in the case. See Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. The evidence petitioner proffered in his habeas petition regarding his drug use the day of the murder is largely irrelevant. It does not matter that he was seen with a bag of cocaine that morning; nor does it matter that Jackson had supplied petitioner with drugs prior to the commission of the crime; nor is it enough to allege that another drug test (which defense counsel could not have obtained) may have shown a smaller, "recreational" amount of cocaine

in his blood on the day of the robbery. Petitioner has not, and cannot, show that there was any measurable amount of cocaine in his blood. In the end, the only evidence he has proffered that would support his claim that he was intoxicated during the robbery is the statement of his accomplice that they had been using drugs that day. That evidence is insufficient to demonstrate a reasonable probability that, had counsel put that evidence before the jury, it would not have recommended, and the trial court would not have imposed, a death sentence. We reach the same result as to petitioner's claim that counsel failed to pursue evidence of his childhood neglect. The extent of his proffer in this regard is that his mother often gave him "good whippings." While times have changed and corporal punishment is becoming less accepted as an appropriate means of disciplining a child, we cannot reasonably conclude that counsel's failure to pursue this evidence affected petitioner's sentence.

▮▮ As to petitioner's argument that counsel failed to provide the psychologist evaluating petitioner's mental state with vital information regarding his background, the district court changed its course and concluded that petitioner failed to satisfy the deficiency prong of the Strickland test. See id. at 687–88, 104 S.Ct. at 2064–65. We cannot fault the court's conclusion. Given the time the court-appointed psychologist invested in his evaluation of petitioner and his knowledge that mitigating factors were vital to petitioner's defense, we cannot conclude that counsel were deficient for failing to provide their expert witness with information that, if it existed, the witness was in a position to discover.

Because the petitioner could not satisfy the requirements of Strickland, he cannot demonstrate that the evidence proffered, if

14. Given our holding that the Florida Supreme Court adequately reweighed the aggravating and mitigating circumstances in petitioner's case, we need not pass judgment on the sufficiency of the supreme court's harmless error analysis.

true, would entitle him to relief. Thus, he is not entitled to an evidentiary hearing on this claim.

## C.

■ Petitioner contends that his sentencing hearing was constitutionally infirm, in that some nonstatutory mitigating evidence was kept from the jury by the trial judge in violation of *Hitchcock v. Dugger*, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), and *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). The trial judge sustained the State's objection to testimony petitioner sought to elicit from his parents. He proposed that his mother testify about the task of raising fourteen children, and the effect it had on him, and that his father testify regarding his absence from the home throughout petitioner's formative years due to job responsibilities. The district court sustained the State's objection on the ground that the proposed testimony was irrelevant. The district court drew a contrary conclusion; the testimony was neither irrelevant nor repetitive, and thus should have been admitted. The district court held, however, that the exclusion of the evidence was harmless error. In its view, the "disallowed testimony was 'insignificant' when viewed in light of the other mitigating evidence tendered." We agree.

As the district court noted, during the sentencing phase of the trial, the jury was informed that petitioner's mother had nine children of her own, and that petitioner from an early age took on the responsibility of providing care and support for his family. While the trial judge should have permitted petitioner to introduce his parents' excluded testimony, we are confident that the marginal value of such testimony would have been so insignificant that its exclusion, although improper, did not affect the outcome of the sentencing phase of the trial. The trial judge's mistake, therefore, was harmless error.[15]

## D.

Petitioner contends that the trial court erred when it denied his request that the court instruct the jury on one of Florida's statutory mitigating factors—that "[t]he defendant acted under ... the substantial domination of another person." Fla. Stat. ch. 921.141(6)(e).[16] In petitioner's view, the evidence before the jury warranted the instruction. He contends that the following facts, established by him and Jackson,[17] yielded the inference that he acted under Jackson's domination and thus required the "substantial domination" instruction. Both men testified that Jackson decided that they needed to rob a bank to get money; that Jackson bought sunglasses to disguise their appearance; that Jackson gave the signal for the robbery to begin; that Jackson directed petitioner's movements within the bank; and that Jackson called petitioner back from the

---

**15.** As stated in note 12, *supra,* the Supreme Court has adopted a less stringent test for harmless error to be utilized by federal courts conducting collateral review of state proceedings. *See Brecht,* 507 U.S. at 637–38, 113 S.Ct. at 1721–22. The test adopted in *Brecht* is whether "the error 'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* at 637, 113 S.Ct. at 1722 (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed.2d 1557 (1946)). The purpose of the less stringent standard is clear: collateral review is designed only to "afford relief to those whom society has grievously wronged." *Id.* at 637, 113 S.Ct. at 1721 (internal quotation marks omitted). It is not designed to apply the same standards of review as those applied on direct review in a case, because applying those same standards would undermine the state's interest in finality of its judgments and infringe upon the state's sovereignty over its own criminal matters.

**16.** The error, according to petitioner, tainted the jury's recommendation that he receive the death sentence and therefore rendered unreliable the sentence the trial court imposed, in violation of the Eighth and Fourteenth Amendments.

**17.** Petitioner testified in both the guilt and sentencing phases of the trial; Jackson testified only in the sentencing phase.

bank's safe (where petitioner had gone in search of more money) when he realized the plan was failing.

At the charge conference held at the conclusion of the evidence in the sentencing phase of the trial, petitioner requested that the court instruct the jury on four statutory mitigating circumstances, including the instruction on substantial domination: (1) "the age of the defendant at the time of the crime," (2) "the defendant was an accomplice in the capital felony committed by another person and his ... participation was relatively minor," (3) "the defendant acted ... under the substantial domination of another person," and (4) "the capacity of the defendant to appreciate the criminality of his ... conduct or to conform his ... conduct to the requirements of law was substantially impaired." Fla. Stat. ch. 921.141(6)(d), (e), (f), and (g).[18] The court gave all but the third request.

██ Whether the evidence was sufficient to require an instruction on substantial domination at the moment petitioner committed the murder turns on whether a reasonable jury could have found that petitioner was under Jackson's substantial domination when he exited the rear of the bank, then walked around to the front of the bank where two officers were subduing Jackson, told the officers to "halt," and when one of the officers spun around with a gun in hand, shot both officers.[19]

What constitutes substantial domination within the meaning of Fla. Stat. ch. 921.141(6)(e) is a question of Florida law. The Florida Supreme Court has spoken to the issue on several occasions. In Groover

v. State, 458 So.2d 226, 229 (Fla.1984), the court discussed the circumstances that could permit the inference that the perpetrator of the crime acted under the substantial domination of another. The court recognized that threats of violence or death from one party may support the inference that the threatened party was under the substantial domination of the other party; such threats would not, however, mandate such an inference. Id. Other circumstantial facts that might yield an inference of substantial domination would be if the defendant was a follower, if he looked up to his accomplice, or if the defendant's accomplice was the dominant figure in their relationship. See Raleigh v. State, 705 So.2d 1324, 1330 (Fla.1997). The Groover court also highlighted circumstances that would rebut the inference of substantial domination, such as the fact that both parties were friends, that at times during the offense each of the defendants was armed while the other was not, and that the defendant claiming to have been dominated could have, while armed, left the scene without threat of harm to himself. Groover, 458 So.2d at 229. In Valdes v. State, 626 So.2d 1316, 1324 (Fla. 1993), the court again provided guidance as to the sort of circumstances that will support a claim of substantial domination; factors such as providing the murder weapon and acting in concert with another (as opposed, presumably, to acting at the direction of another) will belie the existence of any substantial domination. See also Raleigh, 705 So.2d at 1330 (quoting sentencing court for the conclusion that a defendant who was the principal perpetra-

---

**18.** The record does not contain the parties written requests for instructions, if any. What the record contains is a transcript of the charge conference. During that conference, the court suggested that petitioner was entitled to instructions (1) and (4); petitioner agreed and asked for, in addition, instructions (2) and (3). We consider the court-counsel colloquy as containing a request from petitioner that instructions on all four statutory mitigating circumstances be given. As noted in the text, the court gave all except (3). As

for that requested instruction, the court held that the evidence was insufficient (as a matter of law) to warrant the instruction.

**19.** Supreme Court precedent supports this proposition. In capital cases, the Constitution requires the trial courts to charge the jury on a statutory mitigating circumstance only "if the evidence so warrants." See Delo v. Lashley, 507 U.S. 272, 275, 113 S.Ct. 1222, 1224, 122 L.Ed.2d 620 (1993).

tor in a murder was not under the substantial domination of another).

The trial court refused to give the requested instruction at issue because the evidence as a whole did not permit the inference that petitioner was acting under the substantial domination of Jackson. The Florida Supreme Court, addressing the question whether the evidence was sufficient to warrant the instruction, agreed. In doing so, it noted the following facts that indicated that petitioner, not Jackson, was the leader in the criminal activity:

> The unrefuted facts in this record establish that, when the twenty-three-year-old [petitioner] and the eighteen-year-old Jackson entered the bank, Hill was armed and Jackson was not. [Petitioner] did most of the talking, demanded money, and threatened that he would "blow some brains out." [Petitioner] also physically abused a bank teller by kicking him and pulling him by the hair while he lay on the floor. Finally, [petitioner] chose to help Jackson rather than utilize his opportunity to escape, and later testified that neither he nor Jackson was a leader, claiming, "We did it together." Clearly, under these circumstances, we find the "substantial domination" mitigating factor does not apply.

*Hill v. State,* 515 So.2d at 178.

On habeas review, the district court concluded that the trial court's failure to give a substantial domination instruction, if error, was harmless. The court reached this conclusion because of two instructions the trial judge did give: (1) that the sentencing jury could consider, if established by the evidence, another statutory mitigating factor—that "[t]he defendant was an accomplice in the capital felony committed by another person and his or her participation was relatively minor;"[20] and (2) that the sentencing jury could consider (in addition to any statutory mitigating circumstances established in the record) "any

other circumstance of the offense" or "any other aspect of the defendant's character or record" (i.e., non-statutory mitigating circumstances) in determining whether to recommend a sentence of life imprisonment or death.

■■■■ We find no error in the trial court's refusal to give the substantial domination instruction; in addition, we agree with the district court, albeit for a separate reason, that if there was error, it was harmless. We find no error because the trial court followed Florida law, as interpreted by the Florida Supreme Court. Considering the court's precedent, the circumstantial evidence on which petitioner based his request for the instruction simply did not rise to the level of substantial domination. As for the harmless error issue, we note that the court's instruction on non-mitigating statutory circumstances permitted the jury to take into account, and give it such weight as it deemed appropriate, petitioner's and Jackson's testimony that it was Jackson who was the brains behind the robbery. Petitioner's counsel utilized this instruction in urging the jury to have mercy on petitioner because Jackson, who had received a life sentence, was the one who engineered the robbery. For these reasons, we affirm the district court's denial of habeas relief on petitioner's substantial domination claim.

### E.

■■■■ Finally, petitioner contends that the prosecutor made improper and inflammatory comments before the jury during the sentencing phase of his trial. The prosecutor told the jury that petitioner did not deserve the same life sentence Jackson received because petitioner elected to stand on his not guilty plea and to put the State to its proof at a trial. The prosecutor ended his closing statement with the following remarks:

> I want to end with this, if I can have one minute to tell you this. The more things

---

**20.** Fla.Stat. ch. 921.141(6)(d).

change, the more they stay the same. And in America things haven't changed. Processes have changed a lot, but things are still the same. 150 years ago if the defendant left a town and stole a horse to come over to Pensacola, some desperado robbing a woman of the horse and he rode here with a companion, and they robbed a bank in the main street of the town, and they were seen by ... many people in the main street of town, and the deputy sheriff came up to arrest the defendant's buddy, and the defendant shot the deputy in the back, they would have strung him up from the nearest tree that day.

Now, the process has changed. He now has a jury trial. It's now taking years to do it, but things still remain the same. The crime calls for the sternest punishment for killing the deputy. He must hang from a tree. We're more merciful now. We'll shock him until he's dead. But that is the sentence that is appropriate in this case under the law. Thank you.

The State has not contended that such comments were appropriate; rather, its position is that the comments, if misguided, were harmless. The district court agreed, stating: "[t]here being no reasonable probability that, but for the prosecutor's improper remarks, the verdict or sentence would have been different, Hill's request for habeas corpus relief on the basis of improper prosecutorial comment must be denied."

The prosecutor's comments certainly were crass and manifestly inappropriate; they did not, however, so taint the proceedings as to render petitioner's death sentence constitutionally deficient. There was ample evidence in the record to support a sentence of death, and the trial judge charged the jury to make its decision on the basis of the evidence alone. That being the case, we will not upset the determination of the Florida Supreme Court that the prosecutor's conduct did not affect petitioner's sentence.

## IV.

For the foregoing reasons, the district court's denial of habeas relief is

AFFIRMED.